FILED
U.S. District Court
District of Kansas
02/20/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**AUSTIN BRYCE LANGLEY,**

    **Plaintiff,**

v.            CASE NO. 26-3033-JWL

**WILL MANLY, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Austin Bryce Langley is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Shawnee County Jail in Topeka, Kansas.[1] The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff's claims relate to his state criminal proceedings. Plaintiff alleges that the prosecutors lied to win a false conviction and to enslave Plaintiff. (Doc. 1, at 1.) Plaintiff claims prosecutors lied by stating that Plaintiff said "I'm about to fucking kill somebody;" lied by saying Plaintiff stabbed the victim twice when one was just a scratch; and lied by saying the victim's pain was 10/10 when it was 5/10. *Id*. at 1, 3. Plaintiff acknowledges that he stabbed the victim, but argues that the victim was only in the hospital for an hour and 21 minutes and only received six

---

[1]Although Plaintiff is a convicted prisoner, it appears that he is currently housed at the Shawnee County Jail for court proceedings. The Kansas Adult Supervised Population Electronic Repository ("KASPER") shows that Plaintiff was transferred from the El Dorado Correctional Facility to Shawnee County on July 20, 2025, for "Court Appearance." *See* https://kdocrepository.doc.ks.gov/kasper/search/detail?offenderID=32799 (last visited February 20, 2026).

1

stitches. *Id*. at 2. Plaintiff also claims that "not a single organ was touched." *Id*. at 3.

Plaintiff alleges that he was convicted of attempted murder in the 1st degree and Level 4 aggravated battery, received a sentence of 55 years and one month, and owes $17,228.45 in restitution. *Id*. at 2–3. Plaintiff claims that "they are also trying to convict [him] of Level 5 Battery on an L.E.O." and for two punches on the ear he is looking at another 11 years. *Id*. at 2. Plaintiff claims that the length of his sentence constitutes cruel and unusual punishment. *Id*.

Plaintiff names as defendants: Will Manley, Deputy District Attorney; Carolyn Smith, Assistant District Attorney; and Kris Kobach, Attorney General of Kansas. For relief, Plaintiff seeks to have the Defendants pay the restitution ordered in his state criminal case. *Id*. at 5.

## II. Statutory Screening of Prisoner Complaints

Because Plaintiff proceeds in forma pauperis in this matter, the Court is required to "dismiss the case at any time if the court determines that—. . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from suit." 28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in

a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Heck Bar and Habeas Nature of Claim

Plaintiff's claims challenge the validity of his sentence. To the extent Plaintiff challenges the validity of his sentence in his state criminal case, his federal claim must be presented in habeas corpus. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). Therefore, any claim challenging his state sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck*, 512 U.S. 477. If a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of his conviction, the claim may be barred by *Heck*. In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.   In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87. Plaintiff has not alleged that the conviction or sentence has been invalidated. As set forth below, it appears that Plaintiff's state court criminal cases are currently pending.

### 2. Immunity

The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well established that Congress did not abrogate the states' sovereign immunity when

it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

For § 1983 purposes, a state official is the state itself when sued in his or her official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). A state officer sued in his or her official capacity also enjoys this protection. *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted).

Defendants Manly and Smith appear to be prosecutors in the Shawnee County District Attorney's Office. *See* Doc. 1–1, at 1 (stating that the prosecutors work in the DA's Office at 200 S.E. 7th, Topeka, Kansas). "[C]ounty district attorneys work for the state, not the county." *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016) (citing K.S.A. § 22a-101(a)[2] (stating the district attorney is the "executive officer of the judicial district in which he is elected" and "in no event shall said district attorney be deemed an officer of any county"); *Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1347 (D. Kan.1994) (holding that "county district attorneys are officers of the state," to which the Eleventh Amendment gives them immunity from suit, unlike county officers)).

Plaintiff has also named the Attorney General of Kansas as a defendant. Plaintiff's only mention of the Attorney General in the Complaint is a statement that the Attorney General "said

---

[2] The statute establishes the office of district attorney for the state's judicial districts 3, 10, 18 and 29, and abolishes the office of county attorney for those judicial districts. K.S.A. § 22a-101(a) and (b). Those judicial districts are for the following counties: 3rd Judicial District – Shawnee; 10th Judicial District – Johnson; 18th Judicial District – Sedgwick; and 29th Judicial District – Wyandotte. *See* https://kscourts.gov/About-the-Courts/District-Courts (last visited Feb. 20, 2026).

[Plaintiff] owe[s] $17,228.45" and a claim that the Attorney General "is familiar with [his] case, and he knows [Plaintiff is] now considered a slave for Cadena Perpetua." (Doc. 1, at 2, 5.) Not only do these statements fail to state a claim, but the Attorney General also enjoys Eleventh Amendment immunity. "The state sovereign immunity enshrined in the Eleventh Amendment confers immunity on the Attorney General . . . in [his] official capacit[y]." *Free Speech Coalition, Inc. v. Anderson*, 119 F.4th 732, 741 (10th Cir. 2024) (finding that where the Attorney General did not enforce or give effect to the Act in question, the *Ex parte Young* exception to that immunity did not apply); *see also Goico v. Kansas*, 2020 WL 3034814, at *2 (D. Kan. 2020) ("As an employee of the state acting in the course of her duty to the state, [the official with the Kansas Attorney General's Office] is generally entitled to the same Eleventh Amendment immunity as her state employer because the Attorney General's office is regarded as an arm of the state."); *Nelson v. Schoenhofer*, 2017 WL 4758966, at *2 (D. Kan. 2017) (The plaintiff's complaint fails to specify whether the defendant is sued in his official capacity, individual capacity, or both. If this is an official capacity action, the "Kansas Attorney General is the 'chief law officer of the state' and therefore is entitled to the same immunity under the Eleventh Amendment as the State itself.") (citing *Maley v. Kansas*, 543 Fed. Appx. 889, 2013 WL 6171080 at *1 (10th Cir. Nov. 26, 2013) (citations omitted)).

The prosecutors also enjoy absolute immunity from liability for damages for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "As *Imbler* and its progeny establish, absolute prosecutorial immunity is intended to protect the judicial process, not the prosecutor." *Chilcoat v. San Juan Cty.*, 41 F.4th 1196, 1208 (10th Cir. 2022) (citations omitted). "Since *Imbler*, the Supreme Court has prescribed, and we have followed, a 'functional approach' to absolute prosecutorial immunity." *Id*. at 1208–

09 (citing *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (quoting *Burns*, 500 U.S. at 478, 111 S.Ct. 1934); *see also Briscoe*, 460 U.S. at 342, 103 S.Ct. 1108 ("[O]ur cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant.")). "Under the functional approach, we 'look to which role the prosecutor is performing' at the time of the challenged conduct, *Mink*, 482 F.3d at 1262, and examine 'the nature of the function performed, not the identity of the actor who performed it' *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)." *Id*. at 1209.

Courts determine whether a prosecutor is performing a function "intimately associated with the judicial phase of the criminal process," by applying a " 'continuum-based approach' and the 'more distant a function is from the judicial process, the less likely absolute immunity will attach[.]' " *Id*. (citations omitted). The Tenth Circuit has held that:

> We begin with an obvious benchmark: a prosecutor is absolutely immune when functioning "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler*, 424 U.S. at 410, 96 S.Ct. 984. By "initiating and presenting the government's case," the prosecutor is cast in "the role of an advocate." *Mink*, 482 F.3d at 1261. As we have summarized, "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).
>
> "The doctrine of absolute immunity, however, is not without limits." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 500 U.S. at 494, 111 S.Ct. 1934. We will not extend absolute immunity when a prosecutor functions "in the role of an administrator or investigative officer rather than that of advocate." *Mink*, 482 F.3d at 1259 (emphasis omitted) (quoting *Imbler*, 424 U.S. at 430-31, 96 S.Ct. 984). The public policy considerations that support the protection of prosecutorial functions are not applicable to investigative and

> administrative acts. *See Thomas v. Kaven*, 765 F.3d 1183, 1193 (10th Cir. 2014) ("Absolute immunity extends only so far as is necessary to protect the judicial process.").
>
> For example, when a prosecutor conducts investigative work normally performed by the police, they are not performing a prosecutorial function. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "Although identifying those acts entitled to absolute immunity is not always easy, the determinative factor is 'advocacy' because that is the prosecutor's main function . . .." *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985); *see also Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011) ("The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate.") (citation omitted).

*Id*.

In this case, Plaintiff alleges that the prosecutors made misstatements during his criminal trial. *See id*. at 1209–10 (noting that the claims against the prosecutor were based on his courtroom conduct—statements made in court during the preliminary hearing). The prosecutors' statements were made in their role as advocates in court, and arguments made during trial "are quintessential advocacy." *Id*. at 1210. "[C]ourtroom advocacy is an activity 'intimately associated with the judicial phase of the criminal process.'" *Id*. (citations omitted).

The Tenth Circuit has held that the falsity of a prosecutor's statements during courtroom advocacy "cannot defeat absolute immunity." *Id*. In *Burns*, the "Supreme Court determined the prosecutor had functioned as an advocate at the probable-cause hearing and was absolutely immune because, at common law, 'prosecutors . . . were absolutely immune from damages liability . . . for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding).' " *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 489–90, 111 S.Ct. 1934 (1991)). Therefore, the prosecutors in this case enjoy absolute prosecutorial immunity for statements made during Plaintiff's criminal trial.

9

### 3. Younger Abstention

The Court may be prohibited from hearing Plaintiff's claims under *Younger v. Harris*, 401 U.S. 37, 45 (1971). "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

An online Kansas District Court Records Search shows that Plaintiff's state criminal proceedings are pending. *See State v. Langley*, Case No. SN-2020-CR-1245 (District Court of Shawnee County, Kansas). Plaintiff filed a notice of appeal on December 20, 2024. *Id*. The last docket entry in the case is the December 9, 2025 Order for Records received from the Appellate Court. *Id*.; *see also State v. Langley*, Case No. 128508 (Kansas Court of Appeals) (the last entry is a January 29, 2026 Order denying Appellant's motion seeking permission to file a supplemental brief).

Plaintiff also mentions that he was charged with battery on an L.E.O. The Court would likewise be required to abstain regarding any claims related to this charge because it appears that Plaintiff's criminal proceedings regarding this charge are ongoing. *See State v. Langley*, Case No. SN-2024-001312 (District Court of Shawnee County, Kansas) (the last entry being the February 19, 2026 Return of Service – Subpoena Criminal).

10

Therefore, it appears that the first and second conditions for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts. *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44). Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies. *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).

"[T]he *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004); *see also Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989) (directing district court to stay claim for damages).

### IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter

without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **March 20, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated February 20, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
